Shirley BOOTEN, Voluntary Administratrix of the Estate of Allen D. Booten, and Shirley Booten, individually, Plaintiff

v.

UNITED STATES of America, Defendant.

No. CIV.A. 99–11229–EFH.

United States District Court, D. Massachusetts.

Dec. 5, 2002.

Brian R. Cunha, Brian Cunha & Associates, Fall River, MA, for Plaintiff.

Mary Elizabeth Carmody, U.S. Attorneys Office, Worcester, MA, for Defendant.

### *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

The Defendant's Motion for Protective Order barring deposition testimony concerning the acts or omissions of Dr. Thomas Rocco requires the Court to address an unusual set of circumstances involving the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C.

§ 2679 (2000) ("the Westfall Act"). Because the Court rules that under the Westfall Act a plaintiff may not contest a United States Attorney's refusal to certify that a defendant employee of the federal government was acting within the scope of his office or employment at the time of the incident out of which the claim arose, defendant's motion is granted.

However, the Court concedes that the question of whether a tort plaintiff may contest the government's refusal to certify is a difficult one. As the Supreme Court of the United States has remarked, the Westfall Act is a "text most interpreters have found far from clear." *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 434, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). And, the Act's application in the circumstances presented by this case is representative. Thus, the Court rules that the grounds for an interlocutory appeal under 28 U.S.C. § 1292(b) are present. The Court's order presents a controlling question of law, in that it will bar plaintiff's recovery for claims involving Doctor Rocco. Further, there is substantial ground for difference of opinion, given that the Westfall Act does not speak clearly to the question, there is no binding precedent squarely on point, and considerable authority holds that tort plaintiffs may challenge a United States Attorney's decision *to* certify. *E.g., Gutierrez de Martinez,* 515 U.S. at 420, 115 S.Ct. 2227; *Nasuti v. Scannell,* 906 F.2d 802, 808 (1st Cir.1990). Finally, an immediate appeal from this order may materially advance the ultimate termination of this litigation. In accordance with 28 U.S.C. § 1292(b), plaintiff has ten days in which to apply to the United States Court of Appeals for the First Circuit for permission to appeal this decision. If the Court of Appeals agrees to hear such an appeal, the Court will stay these proceedings pending a decision by the Court of Appeals in order to avoid unnecessary discovery efforts.

Plaintiff's cause of action arises from the medical treatment received by her husband, Allen D. Booten, II, at the Veterans' Affairs Medical Center in Providence, Rhode Island, and his death there on March 10, 1997. At this juncture, three of the plaintiff's claims remain: one count alleging medical negligence, another alleging wrongful death, and a final claim for loss of consortium.

Mr. Booten was admitted to the Medical Center on January 14, 1997. On January 15, he underwent an allegedly radical and unnecessary surgery to remove his esophagus. Doctors at the Medical Center began a second surgery on Mr. Booten on February 7, 1997 and completed it on February 12, 1997. As a result of the surgeries, Mr. Booten developed a series of medical problems, including brain damage, and he became comatose.

Mr. Booten died on March 10, allegedly the result of a fatal dose of morphine sulphate administered by Dr. Thomas Rocco. Doctor Rocco, a fourth-year resident at the time, had taken over the management and care of Mr. Booten on February 18, six days after the second surgery was complete.

The plaintiff claims that the Medical Center and its agents were negligent in four respects: (1) the initial decision to perform the esophagectomy; (2) the failure to obtain Mr. Booten's informed consent to perform the surgery; (3) the recognition, management, and treatment of the complications that began on January 26, 1997 and went untreated until February 7, 1997; and (4) Doctor Rocco's administration of the morphine sulphate. As none of these allegations save the last implicate Doctor Rocco, testimony regarding Doctor Rocco's actions would be relevant only if the defendant could be held liable for Doctor Rocco's administration of the morphine sulphate. The Court now turns to this question.

■ The Federal Tort Claims Act ("FTCA") waives the sovereign immunity of the United States with respect to tort claims. *Roman v. Townsend*, 224 F.3d 24, 27 (1st Cir.2000) (citing 28 U.S.C. § 2674). It also provides the exclusive remedy to compensate for a federal employee's tortious acts committed within the scope of his or her employment. *Id.* (citing 28 U.S.C. § 2679). To give effect to the FTCA, when a federal employee is sued for a wrongful or negligent act, the Westfall Act empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose ..." *Gutierrez de Martinez*, 515 U.S. at 419–20, 115 S.Ct. 2227 (quoting 28 U.S.C. § 2679(d)(1)).[1] Upon certification, the defendant employee is dismissed from the action and the United States is substituted as defendant. *Id.* at 420, 115 S.Ct. 2227. "Ordinarily, scope-of-employment certifications occasion no contest. While the certification relieves the employee of responsibility, plaintiffs will confront instead a financially reliable defendant." *Id.* at 422, 115 S.Ct. 2227.

This is no ordinary case, however. The United States Attorney declined to certify Doctor Rocco, who was initially named a defendant in his individual capacity, because he concluded Doctor Rocco's administration of the morphine sulphate did not come within the scope of his employment.[2] In the rare instances when the United States Attorney refuses to certify, it is typically the defendant employee who wishes to challenge that decision in order to avoid personal liability. To that end, the Westfall Act permits defendant employees to petition in federal district court for certification at any time prior to trial. 28 U.S.C. § 2679(d)(3). However, here the plaintiff voluntarily dismissed her claims against Doctor Rocco with prejudice and over the objection of the defendant. As a result, Doctor Rocco is no longer in a position to contest the refusal to certify.

Having dismissed Doctor Rocco individually, but without securing the government's waiver of sovereign immunity through certification, the plaintiff would appear to have no viable defendant to answer for the alleged euthanasia. To avoid such a state of affairs, plaintiff contends that the Court may override the government's refusal to certify by determining that Doctor Rocco was acting within the scope of his employment and requiring the government to assume liability for his conduct.

The plain text of the Westfall Act, however, provides no avenue by which a tort plaintiff may contest a refusal to certify. To support her suggestion that such a right should be read into the statute, the plaintiff points to *Nasuti*, 906 F.2d at 812–13. In *Nasuti*, the First Circuit stated that the Attorney General's certification of the defendant employee in that case conclusively established scope of employment for *removal* purposes, but the district court could determine the scope question ultimately where doing so was necessary to resolve disputed rights and the court's own subject matter jurisdiction. *Id.* at 808.[3]

---

1. Although 28 U.S.C. § 2679(d)(1) gives the power to certify to the Attorney General, the Attorney General has designated that authority to the United States Attorneys. 28 C.F.R. 15.3(a) (2002).

2. Doctor Rocco's actions were referred to the Federal Bureau of Investigation and a grand jury was convened, though no indictment issued. Doctor Rocco has ceased practicing medicine. The United States Attorney did certify the other doctors who treated Mr. Booten.

3. 28 U.S.C. § 2679(d)(2) states: "Upon certification by the Attorney General that the defendant employee was acting within the scope

In *Gutierrez de Martinez,* the Supreme Court agreed with the First Circuit's decision in *Nasuti,* holding scope-of-employment certification reviewable in court. 515 U.S. at 420, 115 S.Ct. 2227. However, neither *Nasuti* nor *Gutierrez* addressed the question presented in this case: whether a tort plaintiff can contest a *refusal* to certify. And the plaintiff did not direct this Court to any case in which that question was addressed. As the question appears to be one of first impression, the Court must interpret the Westfall Act, guided, of course, by the knowledge that the statute at issue is a waiver of the federal government's sovereign immunity.

■ Turning to the plain language of the Westfall Act, 28 U.S.C. § 2679(d)(3) states: "In the event that the Attorney General has refused to certify scope of office or employment under this section, *the employee* may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment." (Emphasis added). The first part of this sentence describes the situation in which this Court is interested: "In the event that the Attorney General has refused to certify." The remainder allows of only one possibility: the employee may petition the court for certification. No other portion of Section 2679 addresses the consequences of a refusal to certify. In short, application of the canon of statutory construction *"expressio unius est exclusio alterius"* suggests that Congress' clear provision of the power to contest a refusal to certify to the defendant employee implies the power is denied to anyone else. The dissent in *Gutierrez de Martinez* made the same point. 515 U.S. at 440, 115 S.Ct. 2227 (Rehnquist, C.J., Souter, Scalia, Thomas, J.J. dissenting).

■ In this analysis of the plain language, the Court bears in mind that the Westfall Act is a congressional waiver of the federal government's sovereign immunity. Any such waiver must be unequivocal and will be construed strictly in favor of the sovereign. *United States Department of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) (internal citations omitted); *United States v. Commonwealth of Puerto Rico,* 287 F.3d 212, 216 (1st Cir.2002); *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995). Absent an unequivocal expression in the statute that tort plaintiffs may contest the refusal to certify, then, the Westfall Act must be read to bar such challenges to the government's invocation of sovereign immunity.

An analysis of some of the significant concerns that persuaded the majority in *Gutierrez de Martinez* to permit tort plaintiffs to contest certification does not support the argument that a similar power ought to be granted regarding refusals to certify. Among the chief reasons cited by the *Gutierrez de Martinez* court was the principle of judicial review of executive action: "[W]hen a Government official's determination of a fact or circumstance—for example, 'scope of employment'—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable." 515 U.S. at 424, 115 S.Ct. 2227. In *Gutierrez de Martinez,* certification and substitution of the United States as defendant would have been dispositive; the plaintiffs' claims arose in a foreign country and, so, fell within an ex-

---

of his office or employment ... any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. ... This certification of the Attorney General shall conclusively establish scope of employment for purposes of removal."

ception to the FTCA's waiver of sovereign immunity. *Id.* at 422, 115 S.Ct. 2227. Therefore, certification would have led to the automatic dismissal of the plaintiffs' case. *Id.*

The dilemma posed by the plaintiff does not involve such a dispositive decision by the government. Faced with the United States Attorney's refusal to certify Doctor Rocco, the plaintiff could have continued against him in his individual capacity. The government's refusal to certify did not mean the demise of plaintiff's cause of action, at least until plaintiff herself voluntarily dismissed Doctor Rocco. Furthermore, as the government might have prevailed in bringing Doctor Rocco's actions within the intentional tort exception to the FTCA,[4] certification may have left plaintiff without a remedy against either the government *or* Doctor Rocco because the FTCA is the exclusive remedy even when one of its exceptions in 28 U.S.C. § 2680 precludes government liability. *See United States v. Smith,* 499 U.S. 160, 166, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991); *Las Brisas, S.E. v. Department of Agriculture Farmer's Home Administration,* 8 F.Supp.2d 141, 149 (D.Puerto Rico 1998); *Aversa v. United States,* 99 F.3d 1200, 1207–08 (1st Cir.1996). On the other hand, the refusal to certify left plaintiff free to pursue her claims against Doctor Rocco as an individual, again, at least until plaintiff herself voluntarily dismissed Doctor Rocco.

The Supreme Court in *Gutierrez de Martinez* also interpreted the Westfall Act to permit district courts to rule finally on certification because the alternative "would cast Article III judges in the role of petty functionaries, persons required to enter as a court judgment an executive officer's decision, but stripped of capacity to evalu-

ate independently whether the executive's decision is correct." 515 U.S. at 426, 115 S.Ct. 2227. Again, the refusal to certify poses no such constitutional problem. In cases where certification has been refused, a court may still proceed to hear and decide the action against the individual employee on the merits. Such a court would not be entering a judgment based merely on the government's decision about scope of employment.

Also important to the *Gutierrez de Martinez* majority was the fact that denying federal courts the authority to review certification would permit the Attorney General to sit as judge in its own cause in those cases involving exceptions to the FTCA. 515 U.S. at 429, 115 S.Ct. 2227. "Upon certification in a case [involving a clear exception to the FTCA], the United States would automatically become the defendant, and just as automatically, the case would be dismissed." *Id.* The present case does not provoke the same concern. The government's refusal to certify Doctor Rocco does not cause the automatic dismissal of the case against him. That happened only upon the plaintiff's motion.

In sum, neither the plain language of the Westfall Act, nor the principles that persuaded the Supreme Court to allow tort plaintiffs to challenge the certification of federal employees, lead this Court to grant plaintiff the opportunity to contest the Attorney General's decision not to certify Doctor Rocco. As the government has not waived its sovereign immunity with regard to Doctor Rocco's acts or omissions, and Doctor Rocco is himself no longer a defendant in this action, these acts or omissions are not relevant to plaintiff's lawsuit. In accordance with Fed.R.Civ.P. 26(c)(1), De-

---

4. 28 U.S.C. § 2680(h) excepts from the FTCA's waiver of sovereign immunity claims arising out of certain intentional torts, including assault and battery.

fendant's Motion for Protective Order is granted.

SO ORDERED.